# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

JOE HAND PROMOTIONS INC.,

                Plaintiff,

v.                                         CIVIL ACTION NO. 2:14-cv-28727

DEBORAH SERGEON NICHOLS, et al.,

                Defendant.

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Default Judgment (ECF No. 14.) For the reasons that follow, the motion is **GRANTED**. Damages are awarded in amounts set forth below.

### I. BACKGROUND

Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") is a nationwide distributor of closed-circuit and pay-per-view sports and entertainment programming to commercial establishments. Joe Hand enters into sublicensing agreements with these establishments to permit the public broadcast of its programming. By contract, Joe Hand purchased rights to distribute the "Ultimate Fighting Championship 171: Lawlor v. Hendricks" broadcast scheduled for March 15, 2014, (the "Broadcast"), via closed circuit television and encrypted satellite signal. (Compl. ¶ 14, ECF No. 1 at 3.) Joe Hand entered into agreements with several West Virginia commercial establishments allowing them to distribute the Broadcast for viewing by their patrons. (*Id.* ¶ 15.)

On November 20, 2014, Joe Hand filed this lawsuit alleging that Defendants Miguel's Sports Grill Inc. ("Miguel's") and Deborah Sergeon Nichols, its principal, owner, or director, unlawfully intercepted and exhibited the Broadcast for the purpose of direct or indirect commercial advantage or private financial gain. The two-count Complaint alleges violations of 47 U.S.C. §§ 553 and 605. Defendants have failed to answer or otherwise respond to the Complaint despite being properly served. The Court entered default on July 28, 2016 and now enters default judgment.

## II. LEGAL STANDARD

Default judgment is available "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F.Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). Under Federal Rule of Civil Procedure 55, which governs default judgments, "trial judges are vested with discretion, which must be liberally exercised, in entering . . . [default] judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). The defendant's failure to respond constitutes an admission of the well-pleaded factual allegations in the complaint, except as related to damages. *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir. 2001). The court must make an independent determination of damages where the amount of the plaintiff's claim is uncertain. Fed. R. Civ. P. 55(b). Reliance on affidavits, without an in-person hearing, is appropriate as long as the record supports the damages requested. *Id.* The Court notes that no hearing is necessary in this case.

### III. DISCUSSION

Joe Hand has alleged violations of §§ 553 and 605. However, an injured plaintiff cannot recover damages under both § 553 and § 605, *see Joe Hand Promotions, Inc. v. Coaches Sports Bar*, 812 F. Supp. 2d 702, 704 (E.D.N.C. Sept. 19, 2011) (citation omitted), and here Joe Hand elects to pursue damages only under § 605. The Court will consider whether Joe Hand has pleaded facts giving rise to liability under § 605 before resolving the question of damages.

Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person . . . ." 47 U.S.C. § 605(a). The statute continues: "Any person aggrieved by any violation of subsection (a) of this section or paragraph (4) of this subsection may bring a civil action in a United States district court." § 605(e)(3). The "intercepted communications" referenced in the statute include satellite transmissions. *See* § 605(d)(6) (defining "any person aggrieved" as a person who maintains "proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming"); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 914 (6th Cir. 2001) (concluding after discussion of the relevant legislative history that "Congress intended to bring cable and satellite communications under the protection of [the Communications] Act").

Joe Hand has alleged facts that, when accepted as true, support liability under § 605. Joe Hand alleges that it was granted the right to display the Broadcast via encrypted satellite signal on March 15, 2014 and that Defendants knowingly and intentionally intercepted its satellite transmission and displayed the program for its patrons to view. (Compl. ¶ 14–18.) Joe Hand

3

provides the affidavit of its auditor, Stoney Lee Shifflett, who was present at Miguel's on March 15, 2014 and testifies that he observed Miguel's airing the Broadcast on four television screens. (Shifflett Aff. at 1, ECF No. 15-3.) Joe Hand adds that there are several illegal methods of accessing the Broadcast, though without discovery it is impossible to determine which particular method Defendants employed. Nevertheless, Joe Hand avers that its programming cannot be mistakenly, innocently, or accidentally intercepted. (Aff. of Joe Hand Jr., President, at ¶ 9, ECF No. 15-1.) Joe Hand believes that Defendants most likely "used an illegal satellite receiver, misrepresented [their] business establishment as a residence, or removed an authorized residential receiver from one location to a different commercial location" to intercept the Broadcast. (Compl. ¶ 18.)

These allegations establish liability against Miguel's as well as Nichols individually, as she "was the individual with supervisory capacity and control over the activities occurring within the establishment on March 15, 2014" and received a financial benefit therefrom. (*Id.* ¶¶ 7–8); *see Joe Hand Promotions, Inc. v. Phillips*, No. 06 Civ. 3624(BSJ)(JCF), 2007 WL 2030285, at *3 (S.D.N.Y. July 16, 2007) (finding vicarious liability applies where the defendant "had a 'right and ability to supervise' the violations, and that he had a strong financial interest in such activities" (citation omitted)). Accordingly, Nichols may be held jointly and severally liable along with Miguel's for the § 605 violation.

An aggrieved plaintiff may recover between $1,000 and $10,000 in actual or statutory damages for each violation of § 605(a). § 605(e)(3)(C)(i)(II). The statute also provides enhanced damages of up to $100,000 per violation for those who violate its provisions "willfully" with the purpose of obtaining a commercial advantage or private financial gain. § 605(e)(3)(C)(ii). Joe

4

Hand requests $4500 in statutory damages and $20,000 in enhanced damages.

A full estimation of actual damages would be speculative in this case, though Joe Hand has provided some evidence to guide the Court's calculation of its losses. Mr. Schifflett attests that 28 patrons were present at Miguel's during the airing of the Broadcast. (Shifflett Aff. at 2.) He estimates the occupancy limit of Miguel's is 50 persons. (*Id.*) Joe Hand calculates rates for its sublicensing contracts based on maximum occupancy, as noted by the "rate card" attached to Joe Hand's motion. For an establishment of this size, Joe Hand would charge $900 for the right to display the Broadcast. (Rate Card, ECF No. 15-4.) Defendants had not paid the fee to air the Broadcast. Joe Hand also submits a printout from Miguel's social media page showing that Miguel advertised the broadcast of a prior Ultimate Fighting Championship ("UFC") event in February 2014. (ECF No. 15-5.) Joe Hand controlled the broadcasting rights to the February event but Defendants did not pay the sublicense fee in that instance either.

District courts within the Fourth Circuit employ one of three methods in determining damages under § 605, with the second and third approaches being the most common. The first approach is to use a flat amount equal to the sublicense fee that was not paid. *J & J Sports Prods., Inc. v. Lara Sport House Corp.*, No. l:10–cv–01369, 2011 WL 4345114, at *6 (E.D. Va. Aug. 26, 2011) (awarding $2200, the licensing fee based on establishment's capacity). The second is to use a per-patron rate. *Joe Hand Promotions, Inc. v. Lawhon*, No. 1:14cv459, 2016 WL 160730, at *2 (M.D.N.C. Jan. 13, 2016) (applying rate of $100 for twelve patrons for a total of $1200); *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F. Supp. 2d 659, 667 (E.D. Va. 2013) (finding sublicense fee alone insufficient to deter future violations and applying a per-patron rate of $100 per patron); *Joe Hand Promotions, Inc. v. Citibars, Inc.*, No. 2:11cv58, 2012 WL

503212, at *5 (E.D. Va. Feb. 8, 2012) (applying $100 per-patron fee). Third, some courts award a flat sum per violation. *Coaches Sports Bar*, 812 F. Supp. 2d at 704 ($2000); *J & J Sports Productions, Inc. v. J.R. 'Z Neighborhood Sports Grille*, No. 2:09–03141–DCN–RSC, 2010 WL 1838432, at *1 (D.S.C. Apr. 5, 2010) ($5000); *Joe Hand Promotions, Inc. v. Angry Ales, Inc.*, No. 3:06cv73, 2007 WL 3226451, at *5 (W.D.N.C. Oct. 29, 2007) ($1000); *Kingvision Pay–Per–View, Ltd. v. Gadson*, No. 1:04–678, 2007 WL 2746780, at *2 (M.D.N.C. Sept. 18, 2007) ($10,000); *Kingvision Pay-Per-View, Ltd. v. Las Reynas Rest.*, No. 4:07-cv-67-D, 2007 WL 2700008, at *3 (E.D.N.C. Sept. 11, 2007) ($2000). This Court has previously adopted the third approach, awarding a flat sum of $5000 for a violation of § 605. *Joe Hand Promotions v. Harrison*, No. 2:14-cv-28688, 2016 WL 6988501, at *3 (S.D. W. Va. Nov. 28, 2016).

The Court continues to prefer the third approach and finds that $4500 is just compensation for Defendants' violation of the statute. In calculating statutory damages, the Court takes into account the $900 lost sublicensing fee, the number of patrons present at Miguel's at the time of the Broadcast, and the estimated 50-person occupancy limit.

Upon finding that Defendants' violation was willful and for "purposes of direct or indirect commercial advantage or private financial gain," the Court may award enhanced penalties up to $100,000. § 605(e)(3)(C)(ii). Without question, Defendants intercepted and aired the Broadcast willfully and for direct or indirect commercial advantage or private financial gain. Joe Hand alleges that the satellite signal was encrypted and could not have been intercepted by accident. Furthermore, the historical advertisement on Miguel's social media page suggests that the establishment previously intercepted UFC events in an attempt to increase patronage.

Enhanced penalties often bear a relation to the amount of the statutory award. *See, e.g.*,

6

*Lawhon*, 2016 WL 160730, at *2 (awarding enhanced damages equal to three times the statutory damages); *Joe Hand Promotions, Inc. v. Upstate Recreation*, No. 6:13-2467-TMC, 2015 WL 685461, at *9 (D.S.C. Feb. 18, 2015) (awarding two-and-one-half times the statutory award in enhanced damages); *J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 708 (W.D.N.C. 2012) (awarding total damages equal to treble the sublicense fee). When determining additional damages, other courts have considered factors such as: "(1) repeated violations over an extended period of time; (2) substantial unlawful monetary gains; (3) significant actual damages to plaintiff; (4) defendant's advertising for the intended broadcast of the event; and (5) defendant's charging a cover charge or charging premiums for food and drinks." *Wing Spot*, 920 F. Supp. 2d at 668 (quoting *Kingvision Pay-Per-View Ltd. v. Rodriguez*, No. 02 CIV. 7972 (SHS), 2003 WL 548891, at *1 (S.D.N.Y. Feb. 24, 2003)).

Joe Hand argues that these factors are somewhat limited in their utility. (*See* Aff. of Joe Hand Jr., President, at ¶ 14.) Still, the Court has no evidence that the circumstances of this case deviate from the norm, save for evidence suggesting that Defendants previously intercepted Joe Hand's satellite broadcasts in an illegal manner. Joe Hand identifies no other aggravating factor that would warrant an exceptional enhanced damages award. The inflated amount suggested by Joe Hand would also be out of line with Court precedent. *Harrison*, 2016 WL 6988501, at *4 (calculating enhanced damages by multiplying statutory damages by a factor of two).

Focusing on the five factors delineated above, only the first is particularly noteworthy. The other factors are neutral or even weigh against an increased award of enhanced damages. Joe Hand has submitted no evidence that Defendants secured substantial monetary gains by virtue of their illegal activity. Further, because Miguel's is a small facility with a maximum capacity of no

more than 50 persons, Joe Hand's actual damages are relatively insignificant.  There is no proof that Defendants advertised the event.  Finally, with regard to the fifth factor, Mr. Shifflett attests that he was not charged a cover fee at Miguel's on the night of the Broadcast.  (Shifflett Aff. at 1.)  Consistent with the deterrence goals of § 605, and as a means of penalizing Defendants' repeated violations, the Court awards enhanced damages equal to two times the statutory damages, or $9000.  This results in total damages of $13,500 against Defendants.

Joe Hand also seeks recovery of the costs expended in prosecuting this action.  In this case, Joe Hand's costs are limited to the Court's $400 filing fee.  (Wagner Decl. at ¶ 8, ECF No. 14-2.)  The Court directs full recovery of costs.  § 605(e)(3)(B)(iii).

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion for Default Judgment.  (ECF No. 13.)  Joe Hand is awarded judgment against both Defendants, jointly and severally, in the amount of $13,500 in statutory and enhanced damages plus $400 in costs, for a total judgment of $13,900.  The Court hereby **DISMISSES** this case and **DIRECTS** that it be removed from the Court's active docket.  A separate Judgment Order will issue memorializing the Court's findings.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      July 28, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE